**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**KENNETH DEWAYNE CARTER, JR., #77715**          **PETITIONER**

**versus**          **CIVIL ACTION NO. 5:07-cv-169-DCB-MTP**

**LAWRENCE KELLY, ET AL.**          **RESPONDENTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* petition of Kenneth Dewayne Carter for a writ of *habeas corpus* under 28 U.S.C. § 2254. Having considered the submissions of the parties, the record of the state court proceedings, and the applicable law, the undersigned is of the opinion that the Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied.

## PROCEDURAL HISTORY

On June 17, 2003, Petitioner Kenneth Dewayne Carter was convicted of armed robbery and carrying a concealed weapon as a convicted felon in the Circuit Court of Warren County.[1] On July 25, 2003, Carter was sentenced as a habitual offender to serve two life sentences to run concurrently. (R.1 at 55-56; 73-74.)

On July 15, 2003, Carter, *pro se*, filed a notice of appeal. (R.1 at 69-70.) On June 11, 2004, Carter filed a motion in the trial court for the appointment of appellate counsel and to proceed *in forma pauperis* on appeal. (R.1 at 93-96.) On September 28, 2004, the trial court granted Carter's motion and appointed counsel to represent him on appeal. (R.1 at 119.) On July 26, 2005, appointed counsel filed an appellant's brief on behalf of Carter. In his brief,

---

[1]Carter was indicted on four counts: 1) armed robbery; 2) carrying a concealed weapon after a felony conviction; 3) simple assault on law enforcement officer; and 4) escape from confinement. (R.1 at 4-7.) The trial court granted Carter's motion for a directed verdict as to count four. Carter was found guilty of counts one and two; the judge declared a mistrial as to count three. (R.1 at 51-56; R.4 at 301-06, 340-42.)

counsel stated that after scouring the record thoroughly, he concluded there were no arguable issues for appeal.[2]

On August 4, 2005, Carter filed his *pro se* appellant's brief, in which he appealed his conviction and sentence to the Mississippi Supreme Court based on the following grounds (as stated by Petitioner):

1.      Kenneth Carter never received the effective assistance of counsel?

2.      Was the Petitioner unconstitutionally deprived of his qualified right to counsel of his choice?

3.      Was the Petitioner unconstitutionally denied a fair hearing on his objections to counsel?

4.      Did the trial court elicit a proper waiver of counsel?

5.      Did the trial court properly deny the motion for a continuance?

6.      Did the state properly prove the charge of possession of a firearm by convicted felon?[3]

On May 9, 2006, the Mississippi Court Appeals affirmed Carter's conviction and sentence in a written opinion. *See Carter v. State,* 941 So. 2d 846 (Miss. Ct. App. 2006), *reh'g denied,* Aug. 15, 2006, *cert. denied,* Nov. 2, 2006.

On April 11, 2007,[4] Carter sought leave from the Mississippi Supreme Court to file his motion for post-conviction collateral relief in the trial court in which he asserted the following

---

[2]*See* State Court Record, No. 2004-KA-01361-COA, "Briefs Filed."

[3]*See* State Court Record, No. 2004-KA-01361-COA, "Briefs Filed." Carter also filed a supplemental *pro se* brief on October 18, 2005. *Id.*

[4]He had three years from the date his "direct appeal [was] ruled upon" to do so. Miss. Code. Ann. § 99-39-5(2).

claims (as stated by Petitioner):[5]

1. Did the Honorable trial court judge's, abuse his discretion by denying the defense's continuance motion to allow the defendant to have a reasonable opportunity to employ and consult with private counsel, and give appointed counsel more time to properly prepare for trial, contrary to Miss. Const. of 1890 Article 3 Section 26,th and 14,th also the U.S. Const. 6,th and 14,th Amendment?

2. The trial court judge's forced the Petitioner's to represent himself at trial as pro se, there was not a valid waiver of the right to counsel, is this not a fundamental error under the 6,th and 14,th U.S. Const.?

3. The trial court judge's, failed to properly look into the irreconcilable conflict trial counsel and the Petitioner's had toward each other, was this a gross violation of the 6,th and 14,th Amend.?

4. Can the Petitioner's establish a prima facie showing that trial counsel was ineffective by failing to subject the prosecution's case to meaningful adversarial testing, a substantial gross violation of the 6,th and 14,th Amend.?

5. Did the trial court judge's erroneously deny the mental examination motion contrary to the 14,th Amend.?

6. Was the Petitioner's appeal counsel ineffective contrary to the 14,th Amend.?

7. Do the cumulative effect of the error(s) warrant a new trial under the 14,th Amend.?

8. Is the Petitioner's sentence grossly disproportionate to his crime?[6]

On May 9, 2007, the Mississippi Supreme Court denied Carter's application stating,

---

[5]Prior to the disposition of his direct appeal, Carter filed previous applications for post-conviction collateral relief in the trial court and the Mississippi Supreme Court. On July 31, 2003, the trial court entered an order denying Carter's motion for post-conviction collateral relief, finding that he had "not exhausted all avenues of appeal" and that the court was "without jurisdiction to hear such matter." *See* State Court Record, No. 2003-M-02032, "Miscellaneous Pleadings." On August 4, 2004, the Mississippi Supreme Court entered an order denying Carter's motion for a writ of mandamus, stating that his direct appeal from the convictions in question, No. 2004-TS-01361-COA, had been assigned to the Court of Appeals for decision, and that any requests for appointment of counsel or other relief should be directed to that court. *Id.*

[6]*See* State Court Record, No. 2007-CT-00571-SCT, "Miscellaneous Pleadings."

After due consideration, the panel finds that Carter's arguments that he was denied a continuance; that he was forced to represent himself; that the trial court failed to recognize a conflict between he and his attorney; that the trial court denied a mental examination; and that his sentence is disproportionate to his crime are procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1). The panel further finds that Carter's claims that he was denied effective assistance of counsel fail to meet the standards required by *Strickland v. Washington*, 466 U.S. 668 (1984). The panel finds that, as to all other claims, Carter has failed to make a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27(5). . . .[7]

Petitioner's Motion for Certiorari, which the Mississippi Supreme Court considered as a

motion for reconsideration, was denied on May 24, 2007.[8]

Carter filed the instant petition [1][2] for writ of habeas corpus on or about September 11,

2007. He asserts the following grounds for relief:

**Ground One**: Unconstitutionally deprived of the guaranteed right to the effective assistance of counsel contrary to the U.S. Const. Amend. Sixth, and *Strickland v. Washington*, 466 U.S. 668 (1984).

**Ground Two**: Unconstitutionally deprived of a continuance in gross violation of the Due Process Clause to the U.S. Const. Amend. Fourteenth, contrary to *Ungar v. Sarafite*, 376 U.S. 575 (1964).

**Ground Three**: The trial judge failed to properly resolve the irreconcilable conflict between trial counsel and the Petitioner to ensure effective representation, in violation of the U.S. Const. Amend. 6th, and 14th, and contrary to the provision of *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970)[,] *United States v. Young*, 482 F.2d 993 (5th Cir. 1973), *Glasser v. United States*, 315 U.S. 60 (1942)[,] *Strickland v. Washington*, 466 U.S. 668 (1984)[,] *Wheat v. United States*, 486 U.S. 153 (1988).

**Ground Four**: The Petitioner was unconstitutionally forced to represent himself at the jury trial as Pro se, without the effective assistance of counsel. The waiver of counsel was not voluntarily, knowingly and intelligently relinquished contrary to the U.S. Const. Amend. 6, 14, and *Johnson v. Zerbst*, 304 U.S. 458 (1938), *Faretta v. California*, 422 U.S. 806 (1975).

**Ground Five:** The Petitioner was unconstitutionally deprived of the counsel of

---

[7] *See* State Court Record, No. 2007-CT-00571-SCT, "Miscellaneous Pleadings."

[8] *Id.*

his choice contrary to the U.S. Const. Amend. 6, 14, and *Powell v. Alabama*, 287 U.S. 45 (1932), *Chandler v. Fretag,* 348 U.S. 3 (1954).

**Ground Six:** The Petitioner was unconstitutionally deprived of the effective assistance of an appellate counsel contrary to the U.S. Const. Amend. 6, 14, and *Douglas v. California*, 83 S. Ct. 814 (1963), *Evitts v. Lucey,* 105 S. Ct. 830 (1985).[9]

DISCUSSION

The Antiterrorism and Effective Death Penalty Act (AEDPA), to which this case is subject,[10] specifies that exhaustion of a claim in state court is required for a federal court to consider the claim: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . . " 28 U.S.C. § 2254(b)(1)(A).

To satisfy this requirement, the petitioner must present his claims to the highest state court in a procedurally proper manner so that the state courts are given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999). This is so because state courts, "like federal courts, are obliged to enforce federal law." *Id.* at 844. Exhaustion results from the petitioner's pursuit of his claims through state courts either by direct appeal or by post-conviction proceedings. *See Orman v. Cain,* 228 F.3d 616, 620 & n.6 (5th Cir. 2000).

Carter has satisfied the exhaustion requirement for the grounds raised in his federal petition by first giving state courts the opportunity to resolve any constitutional issues. With the exception of Ground Three, discussed below, Carter's grounds were "adjudicated on the merits

---

[9]*See* Petition [1].

[10]*See Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002).

in State court proceedings." 28 U.S.C. § 2254(d).  Under the AEDPA, when the state court has adjudicated the petitioner's claims on the merits,[11] the federal court reviews mixed questions of law and fact under subsection (d)(1).  *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). Since the exhausted grounds raised in Carter's federal petition involve mixed questions of law and fact, this court's authority to grant habeas relief on these claims is limited to a determination of whether the decisions of the Mississippi appellate courts "[were] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Whether the applicable law is clearly established for purposes of a Section 2254(d)(1) analysis is determined solely by reference to Supreme Court decisions "as of the time of the relevant state-court decision."  *Williams v. Taylor,* 529 U.S. 362, 412 (2000).  A decision by any other court "even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)."  *Salazar v. Dretke,* 419 F.3d 384, 399 (5th Cir. 2005).

The "unreasonable application" inquiry is based on an objective standard, and for purposes of a Section 2254(d)(1) analysis, "unreasonable" does not equate with "incorrect." *Garcia v. Dretke,* 388 F.3d 496, 500 (5th Cir. 2004).   The application of clearly-established precedent must be both incorrect and unreasonable for federal habeas relief to be warranted.  *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable,"[12] but it is to review only the state court's ultimate conclusion and not the reasoning that was used to reach it.  *Neal,* 286 F.3d at 246.  This inquiry "is not altered when, as in this case, state habeas

---

[11] "On the merits" refers to substantive, rather than procedural, disposition of the case. *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002).

[12] *Neal,* 286 F.3d at 244 (citing *Williams v. Taylor,* 529 U.S. 362, 409 (2000)).

relief is denied without an opinion." *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003) (vacating judgment and denying habeas corpus relief).

It is by these principles and against the backdrop of exhaustion requirements and substantive determinations that Carter's claims must be viewed–with the added observation that a federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir. 1986). As discussed below, Carter cannot circumvent the bar to federal habeas review by bringing his exhausted claims within the narrow exception set forth in 28 U.S.C. § 2254(d)(1).

**Ground One**

In Ground One, Carter claims he was deprived of the guaranteed right to effective assistance of counsel contrary to the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, he claims that his trial counsel "was inadequately prepared for trial, and inexperienced with the laws that provided a (sic) affirmative defense." (Memo. [2] at 33.) He claims that counsel failed to properly investigate an insanity defense, which resulted in her motion for a mental examination being dismissed for lack of evidence. Carter further alleges that his trial counsel failed to preserve any plausible ground for appeal. He claims that trial counsel's incompetence caused his motion for continuance to be denied; he claims she should have "reargued the motion and preserved the errors for appeal." (Memo. [2] at 35.) Finally, he claims his trial counsel "failed to subject the state's case to meaningful adversarial testing." (Memo. [2] at 25-40; [2-2] at 1-5.)

Carter raised these issues on direct appeal, in his *pro se* brief, and the Mississippi Court of Appeals rejected them on their merits. The court cited the standard under *Strickland v. Washington*, 466 U.S. 668 (1984) and held, "Carter has wholly failed to show any deficiency in

[his trial counsel's] representation; therefore, this issue is without merit." *Carter v. State*, 941 So. 2d 846, 849-50 (Miss. Ct. App. 2006). The court reasoned, "Carter's complaints are conclusory, vague and unsupported by the record." *Carter*, 941 So. 2d at 850. Carter also raised an ineffective assistance of counsel claim in his state motion for post-conviction collateral relief. The Mississippi Supreme Court denied the motion, finding that "Carter's claims that he was denied effective assistance of counsel fail to meet the standards required by *Strickland v. Washington*, 466 U.S. 668 (1984)."[13]

Given that an ineffective assistance of counsel claim presented for habeas review presents a mixed question of law and fact,[14] and that *Strickland v. Washington* is the "clearly established Federal law" which governs such claims, the Section 2254(d)(1) issue in this case is "whether the Mississippi [Court of Appeals'] decision to reject [Carter's] ineffective assistance claim[s] 'involved an unreasonable application' (and not merely an incorrect application) of *Strickland.*" *Neal,* 286 F.3d at 235-36.

It was in *Strickland* that the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding is to be measured: Carter must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the standard requires a showing that counsel's acts "fell below an objective standard of reasonableness"). "To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986)

---

[13]*See* State Court Record, No. 2007-CT-00571-SCT, "Miscellaneous Pleadings."

[14]*Nixon v. Epps,* 405 F.3d 318, 324 (5th Cir. 2005).

(citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)).  Further, Carter must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

The record reflects that Josie Mayfield Hudson was appointed to represent Carter on or about April 21, 2003.  (R.1 at 23-25.)  The trial was set for June 16, 2003.  (R.1 at 8.)  On June 2, 2003, Hudson moved for a psychiatric evaluation.  After a hearing on the matter, the court denied the motion, finding that the defendant failed to meet the minimum standard entitling him to an evaluation.  (R.1 at 22; R.2 at 29-44.)  On June 13, 2003, three days prior to the trial setting, Hudson moved to continue Carter's trial, claiming she needed additional time to adequately prepare for Carter's defense and that she had a difficult time communicating with him.  (R.1 at 23-25; R.2 at 46-49.)  After a hearing on the matter, the court denied the motion.  The trial judge stated that Carter's failure to cooperate with defense counsel was his fault and could not be used a basis for a continuance.  As to Carter's expressed intent to hire private counsel, the judge stated that he could hire whomever he wished to participate in the trial, but that the trial was going forward as scheduled on June 16, 2003.  (R.2 at 48-49.)

On the morning of trial, Carter indicated to the trial judge, in chambers, that he desired to represent himself.  After questioning Carter about his education and his understanding of the trial and the consequences of representing himself, the court found that Carter had knowingly and voluntarily exercised his right to represent himself.  The court advised Carter that he would have Hudson, his appointed counsel, available throughout the trial if he wished to consult with her or changed his mind about representing himself.  (R.2 at 59-63.)  Further, Alfred H. Rhodes, Jr., Esquire, was present at trial at the request of Hudson.  Rhodes, along with Hudson, assisted

Carter with the trial.  (R.2 at 52, 64-64.)[15]

As previously stated, Carter was indicted on four counts: 1) armed robbery; 2) carrying a concealed weapon after a felony conviction; 3) simple assault on law enforcement officer; and 4) escape from confinement.  (R.1 at 4-7.)  At the close of the state's presentation of evidence, Hudson and Rhodes moved for a directed verdict as to all four counts.  The trial court granted Carter's motion for a directed verdict as to count four.  (R.4 at 301-06.)  Carter was found guilty of counts one and two; the judge declared a mistrial as to count three.[16]  (R.1 at 51-56; R.4 at 301-07, 340-42.)

Carter has failed to affirmatively prove that his counsel was defective.  Indeed, because he made the voluntarily decision to represent himself, there is no evidence that Hudson was not adequately prepared for trial, as she did not get the opportunity to defend Carter during trial.  However, despite Carter's decision to represent himself, and despite the fact that Hudson was only directed to be available to assist Carter when needed during trial, the record reflects that Hudson did make objections on Carter's behalf, and moved for directed verdict on his behalf.  (R.3 at 268-72; R.4 at 301-06.)  Indeed, Hudson's motion was successful and the court granted a directed verdict on Carter's behalf as to count four.  (R.4 at 306.)  Moreover, at Carter's request, Rhodes made the closing statement on his behalf.  (R.4 at 332-37.)

Carter claims his counsel failed to preserve plausible issues on appeal, but fails to

_____

[15]The trial judge apparently mistakenly referred to Mr. Rhodes as "Mr. Johnson."  (R.2 at 63.)

[16]During jury deliberations, the jury sent the judge the following note concerning count three: "Do all 12 jurors have to vote guilty or not guilty? . . . If we have 11 guilty and one not guilty, is it a 'not guilty' verdict?"  (R.4 at 341.)  The judge declared on the record that he declared a mistrial as to count three, stating, "Once they tell me how they've voted, I cannot give them any further instruction . . . ."  *Id.*  The jury then came back into the courtroom and the clerk read the jury verdicts.  The jury found Carter not guilty of simple assault, count three.  However, the judge had already declared a mistrial as to that count.  *Id.* at 341-42.

identify what issues should have been preserved.  Carter claims that his counsel should have conducted a proper investigation prior to moving for a mental evaluation, and should have better prepared for an insanity defense.  However, Carter submits no evidence to show that he was unable to distinguish right from wrong at the time he committed the crimes.[17]  Carter claims he informed Hudson that when he was fourteen (approximately 14 years prior to the charged crimes), he dove out a glass window, which resulted in a Vicksburg Youth Court judge ordering him to submit to a psychiatric evaluation.  However, he does not identify the circumstances surrounding the incident, or the results of the evaluation.  (Memo. [2-2] at 1.)  Carter also claims he was on suicide watch at the Issaquena County Jail prior to his trial, and attaches records from the Warren County Mental Health Service reflecting a mental evaluation conducted after his trial.[18]  Although Carter apparently has some mental issues which allegedly cause him to have trouble sleeping and have resulted in attempts to harm himself, he has failed to establish that he could not distinguish right from wrong at the time of the crimes.

Moreover, while Carter claims he was on drugs at the time of the crimes and was not in his right state of mind, this does not support his entitlement to an insanity defense.[19]  (R.2 at 15-17.)  During the hearing on the motion for a psychiatric evaluation, Sergeant Tom Wilson for the Vicksburg Police Department testified that he interviewed Carter the day after his arrest and

---

[17]*See Crawford v. State*, 787 So. 2d 1236, 1246 (Miss. 2001) ("In Mississippi, the determination of insanity at the time of the offense is controlled by the *M'Naghten* test; 'whether the defendant was unable to distinguish right from wrong at the time the act was committed.") (citations omitted).

[18]*See* State Court Record, No. 2007-CT-00571-SCT, "Miscellaneous Pleadings."

[19]"If a defendant, when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated and commits an offense while in that condition, he is criminally responsible for such acts."  *Greenlee v. State*, 725 So. 2d 816, 823 (Miss. 1998).

there was no indication that he had any type of mental problems or was not in his right mind. (R.2 at 32-43.)

Based on the foregoing, even assuming a*rguendo* that Hudson and/or Rhodes were deficient in failing to secure a psychiatric examination prior to trial and/or failing to raise the insanity defense, Carter has failed to affirmatively prove that the outcome of his trial would have been different "but for counsel's alleged errors." *Vuong*, 62 F.3d at 685.

Finally, Carter's claims that Hudson was defective for not "re-arguing" his motions for continuance after they were denied are without merit. (Memo. [2] at 35-38.) As previously stated, Hudson moved to continue Carter's trial three days prior to trial. The court conducted a hearing on the motion and denied it, finding that Carter's failure to cooperate with defense counsel was his fault and could not be used a basis for a continuance. (R.1 at 23-25; R.2 at 46-49.) The other instance Carter claims Hudson should have "re-argued" the motion for continuance occurred during the sentencing hearing. Hudson informed the judge that two of the witnesses they planned to call, who had been present at the courthouse earlier in the day, could not be located. Hudson moved for a continuance, and the judge denied the motion. (R.4 at 386-88.) Even if Hudson would have "re-argued" the motions, there is no evidence to suggest that the court would have granted the motions, or that the outcome would have been different.

In his petition [2], Carter "acknowledge[s] that he is guilty of the charges," but claims that he was denied a fair trial and the effective assistance of counsel "which justif[ies] the issuance of the federal writ." (Memo. [2] at 27.) Thus, even if his counsel were defective, he has failed to establish prejudice, as he has failed to prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong*, 62 F.3d at 685 (quoting *Lockhart*, 506 U.S. at 369). Since Carter acknowledges that he is guilty of charges one and two, and since he was granted a directed verdict as to count four and a mistrial was declared as to count three, it is unclear as to

what more he expected from his counsel (other than successfully raising the insanity defense which is addressed above), especially since he made the decision to represent himself, and his appointed counsel was only there to assist him when needed. It appears that Carter had unreasonable expectations of his counsel, and accordingly, made the voluntarily decision to represent himself.[20]

Based on the foregoing, this court cannot conclude that counsel's alleged failures constituted deficient performance or resulted in prejudice to Carter. *See Lockhart*, 506 U.S. at 368-70 (emphasizing that the "Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial" and that "the touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding") (internal quotations and citations omitted); *see also Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000).[21] Given the deferential standards that apply, the Mississippi appellate courts' rejection of Carter's ineffective assistance of counsel claims does not involve an objectively unreasonable application of *Strickland* to the facts of his case. *See Neal,* 286 F.3d at 247 (affirming denial of petition). Therefore, Carter is not entitled to habeas relief on these grounds.

### Ground Two

In Ground Two, Carter claims he was **"**unconstitutionally deprived of a continuance in gross violation of the Due Process Clause to the U.S. Const. Amend. Fourteenth, contrary to *Ungar v. Sarafite*, 376 U.S. 575 (1964)." (Pet. [1] at 2-3.) Specifically, he claims his counsel

---

[20]During voir dire, Carter stated to the prospective jurors, "Well, I wouldn't like to represent myself, but I can't hire Johnny Cochran. So I feel like I'll be the best one until-- until that time." (R.3 at 168.)

[21] "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we can find no merit to these claims." *Id.* (internal alterations and citation omitted).

was unprepared and incompetent, and the trial judge failed to make an "adequate inquiry" into his dissatisfaction with trial counsel. He further claims that the denial of continuance prevented him from employing private counsel. (Memo. [2-2] at 6-10.)

As previously discussed, Hudson was appointed to represent Carter on or about April 21, 2003, and the trial was set for June 16, 2003. (R.1 at 8, 23-25.) On June 13, 2003, Hudson moved to continue Carter's trial, claiming she needed additional time to adequately prepare for Carter's defense and that she had a difficult time communicating with him. (R.1 at 23-25; R.2 at 46-49.) After a hearing on the matter, the court denied the motion, finding that Carter's failure to cooperate with defense counsel was his fault and could not be used a basis for a continuance. As to Carter's expressed intent to hire private counsel, the judge stated that he could hire whomever he wished to participate in the trial, but that the trial was going forward as scheduled on June 16, 2003. (R.2 at 48-49.)

Carter raised this issue on direct appeal in his *pro se* brief, and the Mississippi Court of Appeals rejected it on its merits. The court stated, "[t]he denial of a motion for a continuance is reviewed for an abuse of discretion, and the denial will not provide grounds for reversal unless 'shown to have resulted in manifest injustice.'" *Carter*, 941 So. 2d at 853 (citing *Payton v. State*, 897 So.2d 921, 931 (Miss. 2003)). The court reasoned, "Carter has failed to indicate what further investigation was needed and what additional witnesses would have been called, and we are unpersuaded by his generic argument that further investigation was necessary." *Carter*, 941 So. 2d at 853. Accordingly, the Mississippi Court of Appeals held that Carter "failed to show that the [trial] court abused its discretion and that the denial resulted in a manifest injustice." *Id.*

Carter also raised this claim in his state motion for post-conviction collateral relief. The

14

Mississippi Supreme Court denied the motion.[22]

The Supreme Court has held that the "matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Unger v. Sarafite*, 376 U.S. 575, 589 (1964). However, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger*, 376 U.S. at 589; *see also Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981) ("When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process.").

Based on the foregoing, the court cannot conclude that the trial judge's denial of Carter's motion for continuance was "so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Hicks*, 633 F.2d at 1148. Accordingly, the court of appeals' decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and habeas relief must be denied.

### **Ground Four**

In Ground Four, Carter claims he "was unconstitutionally forced to represent himself at the jury trial as Pro se, without the effective assistance of counsel" and that his "waiver of counsel was not voluntarily, knowingly and intelligently relinquished contrary to the U.S. Const. Amend. 6, 14, and *Johnson v. Zerbst*, 304 U.S. 458 (1938), *Faretta v. California*, 422 U.S. 806

---

[22]*See* State Court Record, No. 2007-CT-00571-SCT, "Miscellaneous Pleadings."

(1975)." (Pet. [1] at 3.) Specifically, Carter claims that because he and his counsel had an irreconcilable conflict, because his counsel was unprepared, incompetent, and ineffective, and because the trial judge "constructively" deprived him of the opportunity to employ private counsel, he "reluctantly" proceeded to trial *pro se.* (Memo. [2-2] at 25-34.) Carter complains that the trial judge never asked him why he wanted to waive his right to counsel, and that the waiver took place while his "eyes were closed." *Id.*

The record reflects that Josie Mayfield Hudson was appointed to represent Carter on or about April 21, 2003. (R.1 at 23-25.) On the morning of trial, June 16, 2003, Carter indicated to the trial judge, in chambers, that he desired to represent himself. The court questioned Carter about his education and his understanding of the trial and the disadvantages of representing himself. Specifically, the trial judge informed Carter that he would be bound to the same rules and procedures that an attorney would be bound by, and that proceeding *pro se* usually increases the likelihood of an unfavorable outcome. After this colloquy, the court stated that Carter was very articulate and appeared to understand the meaning and consequences of a waiver of counsel, and found that Carter had knowingly and voluntarily exercised his right to represent himself. The court advised Carter that he would have Hudson, his appointed counsel, available throughout the trial if he wished to consult with her or changed his mind about representing himself. (R.2 at 59-64.) Further, as previously noted, Mr. Rhodes assisted Carter during the trial. (R.2 at 52, 63-64.)

Carter raised this issue on direct appeal in his *pro se* brief, and the Mississippi Court of Appeals rejected it on its merits. The court stated, "The right of a defendant to conduct his own defense is not absolute, existing only where the waiver of counsel can be made in a knowing, intelligent and voluntary manner." *Carter*, 941 So. 2d at 852 (citing *Howard v. State*, 701 So. 2d 274, 279 (Miss.1997), *Faretta v. California*, 422 U.S. 806 (1975), *Johnson v. Zerbst*, 304 U.S.

458, 464 (1938)). After evaluating the colloquy between Carter and the trial judge, and noting

that the judge had followed Uniform Rule 8.05,[23] the court of appeals held that the trial judge did

not abuse his discretion in accepting Carter's waiver of counsel. *Carter*, 941 So. 2d at 852-53.

Moreover, the court noted that Carter did not proceed strictly *pro se*, as he had the assistance of

Ms. Hudson and Mr. Rhodes, despite his waiver. *Id.*

The Supreme Court has held that the Sixth Amendment "implies a right of self-

representation." *Faretta v. California*, 422 U.S. 806, 821-36 (1975) (holding that the trial court

---

[23]Rule 8.05 of the Uniform Rules of Circuit and County Court Practice provides:

When the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:

1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
2. The defendant has the right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.
4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.
5. Other matters as the court deems appropriate.

After instructing the defendant and ascertaining that the defendant understands these matters, the court will ascertain if the defendant still wishes to proceed pro se or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed pro se, the court should determine if the defendant has exercised this right knowingly and voluntarily, and, if so, make the finding a matter of record. The court may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.

erred in refusing to accept defendant's knowing and intelligent waiver of counsel; forcing defendant to accept a state-appointed public defender against his will deprived him of his constitutional right to conduct his own defense).  However, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel."  *Faretta*, 422 U.S. at 835.  Thus, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."  *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).  The Court further stated,

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Faretta*, 422 U.S. at 835 (internal citations and quotations omitted).

Based on the foregoing, the court finds that Carter's waiver of counsel was knowing and intelligent.  As set forth above, the trial judge questioned Carter about his education and background, informed him that he would be bound to the same rules and procedures that an attorney would be bound by, and advised him of the potential adverse consequences of proceeding *pro se*.  After Carter indicated to the judge that he understood same, the judge found that Carter had knowingly and voluntarily exercised his right to represent himself.  (R.2 at 59-64.)  *But cf. Gross v. Cooper*, 312 F. App'x 671 (5th Cir. 2009) (reversing district court's dismissal of habeas petition raising similar ground, where the trial judge failed to inquire as to defendant's background and failed to advise him of the adverse consequences of representing himself before finding a valid waiver of counsel).  Accordingly, the court of appeals' decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and habeas relief must be denied.

**Ground Five and Ground Three**[24]

In Ground Five, Carter claims he "was unconstitutionally deprived of the counsel of his choice contrary to the U.S. Const. Amend. 6, 14, and *Powell v. Alabama*, 287 U.S. 45 (1932), *Chandler v. Fretag*, 348 U.S. 3 (1954)." (Pet. [1] at 4.) Specifically, he claims that the trial court should have granted his motion for continuance, discussed above, so he could hire private counsel to defend him at trial. He also claims that the trial court should have appointed him different counsel at the sentencing hearing. (R.4 at 346-47.) Carter raised this issue on direct appeal in his *pro se* brief, and the Mississippi Court of Appeals rejected it on its merits. *Carter*, 941 So. 2d at 851.

In Ground Three, Carter claims "[t]he trial judge failed to properly resolve the irreconcilable conflict between trial counsel and the Petitioner to ensure effective representation, in violation of the U.S. Const. Amend. 6th, and 14th, and contrary to the provision of *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970)[,] *United States v. Young*, 482 F.2d 993 (5th Cir. 1973), *Glasser v. United States*, 315 U.S. 60 (1942)[,] *Strickland v. Washington*, 466 U.S. 668 (1984)[,] *Wheat v. United States*, 486 U.S. 153 (1988)." (Pet. [1] at 3.) He also claims the trial court improperly denied him a fair hearing on his objections to his trial counsel. (Memo. [2] at 11-24.)

Carter raised ground three on direct appeal and the Mississippi Court of Appeals declined to address it. The court noted that Carter failed to identify where or when he raised objections to his attorney before the trial court. Because Carter failed to adequately identify facts to support this claim, the court determined that it could not "adequately determine whether [the] issue ha[d]

---

[24]Because Ground Five and Ground Three are interrelated, the court will analyze them together.

merit." *Carter*, 941 So. 2d at 852.[25]

The circumstances surrounding Carter's motion for a continuance prior to trial are discussed above. *See United States v. Magee*, 741 F.2d 93, 95 (5th Cir. 1984) (holding that "it is within the judge's discretion to deny a change of counsel on the morning of trial if the change would require a continuance"). As noted by the court of appeals, Carter never actually objected to his appointed counsel or moved for a substitution of counsel prior to trial. Rather, his counsel moved for a continuance, advising the judge that she was having communication problems with her client and that his family had advised her they wanted to hire private counsel. When the judge denied the motion, Carter replied, "Can we get a new judge Your Honor? I want a motion for a new judge. I want to go in front of Judge Patrick." (R.2 at 48-49.) Carter did not actually request substitute counsel until after trial, when he requested new counsel for the sentencing hearing. (R.4 at 346-47.) The court denied the motion. *Id.*

Even if Carter had objected to his appointed counsel or moved for substitute counsel before or during trial, he would not be entitled to relief on this basis. *See United States v. Breeland*, 53 F.3d 100, 106 (5th Cir. 1995) (holding that "the right to counsel guaranteed by the Sixth Amendment does not include the right to counsel of one's choice"); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *Magee*, 741 F.2d at 95.

In *Vega v. Johnson*, 149 F.3d 354, 359–60 (5th Cir. 1998), petitioner claimed that the

---

[25]Carter also raised this ground, "that the trial court failed to recognize a conflict between he and his attorney[,]" in his motion for post-conviction collateral relief and the Mississippi Supreme Court found that it was procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1). *See* State Court Record, No. 2007-CT-00571-SCT, "Miscellaneous Pleadings." Accordingly, Respondent claims that this claim is procedurally barred from federal habeas review. However, a review of the record reflects that Carter arguably attempted to exhaust this ground on direct appeal. Thus, the court will review this claim on its merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

trial court erred by failing to appoint him new counsel after he advised the court of a conflict with his appointed counsel. The Fifth Circuit held, "[t]his claim is meritless, because the court had no duty to appoint new counsel." *Vega*, 149 F.3d at 360. Vega's stated conflict was that he wanted to assert his innocence, whereas his attorney recommended he plead guilty. Similar to the case *sub judice*, Vega's appointed counsel "expressed concerns that Vega refused to communicate with him, thereby reducing his efficacy." *Id.* However, the Fifth Circuit pointed out that neither Vega nor his counsel "claimed any practical conflicts." *Id.* The Fifth Circuit held,

> Given that the attorney accepted Vega's decision not to take [his advice to plead guilty], the existence of any "conflict" worth mention is dubious. At most, Vega and his attorney had a "conflict" with respect to trial strategy, a problem with no constitutional significance as long as Vega's wishes were respected on ultimate issues such as pleading guilty and testifying.

*Id.* Like Vega, Carter has failed to identify any specific "practical" conflicts with his appointed counsel.

Based on the foregoing and the court's conclusion that Carter is not entitled to relief on his claims for ineffective assistance of counsel, habeas relief on these grounds must be denied.

### **Ground Six**

In Ground Six, Carter claims he "was unconstitutionally deprived of the effective assistance of an appellate counsel contrary to the U.S. Const. Amend. 6, 14, and *Douglas v. California*, 83 S. Ct. 814 (1963), *Evitts v. Lucey,* 105 S. Ct. 830 (1985)." (Pet. [1] at 4.) Specifically, Carter complains that his appellate counsel did not communicate with him prior to filing his appellate brief. He also complains that his appellate counsel filed a "no-merit" brief, and that there is a reasonable probability that had he filed a "merit brief," Carter's appeal would have been successful. (Memo. [2-2] at 38-40.)

Carter raised this claim in his state motion for post-conviction collateral relief, and the

Mississippi Supreme Court denied it on its merits. The court found, "Carter's claims that he was denied effective assistance of counsel fail to meet the standards required by *Strickland v. Washington*, 466 U.S. 668 (1984)."[26]

The record reflects that the trial court appointed Thomas P. Setser, Esquire to represent Carter on appeal. (R.1 at 119.) On July 26, Mr. Setser filed an appellant's brief on behalf of Carter. In his brief, Mr. Setser stated that after scouring the record thoroughly, he concluded, pursuant to *Lindsey v. State*, 939 So.2d 743 (Miss. 2005),[27] there were no arguable issues for appeal.[28]

"[T]he proper standard for evaluating [Carter's] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland v. Washington* . . . [,]" discussed above. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (citations omitted); *see also Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986) (holding that the *Strickland* test applied to petitioner's claim of ineffective assistance of appellate counsel and "requires proof showing both a failure of counsel to perform according to reasonable professional standards and prejudice"). Carter "must first

---

[26]*See* State Court Record, No. 2007-CT-00571-SCT, "Miscellaneous Pleadings."

[27]In *Lindsey*, the Mississippi Supreme Court implemented a new procedure to be followed when appointed appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues for appeal. *Lindsey*, 939 So.2d at 748. This procedure is discussed in detail below.

[28]*See* State Court Record, No. 2004-KA-01361-COA, "Briefs Filed." Mr. Setser certified that he reached this conclusion after thoroughly examining the following: "(a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits; and (h) possible application of the law in sentencing." *Id.*

As stated above, Carter filed a *pro se* appellate brief. *See* State Court Record, No. 2004-KA-01361-COA, "Briefs Filed." Carter's grounds for appeal were considered by the Mississippi Court of Appeals and found to be without merit. *See Carter v. State*, 941 So. 2d 846, 849-50 (Miss. Ct. App. 2006).

show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal--that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Robbins*, 528 U.S. at 285-86 (citations omitted). If Carter is able to demonstrate that his appellate counsel's performance was objectively unreasonable, "he then has the burden of demonstrating prejudice[;] . . . he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.* at 286.

An appellate counsel's "role as advocate requires that he support his client's appeal to the best of his ability." *Anders v. State of Cal.*, 386 U.S. 738, 744 (1967). However, "[a]n attorney, whether appointed or paid, is . . . under an ethical obligation to refuse to prosecute a frivolous appeal." *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988). In *Anders*, the Supreme Court set forth certain procedural safeguards that must be followed when a defendant's appellate counsel finds his client's appeal to be frivolous and wishes to withdraw. The Court stated that when "counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." *Anders*, 386 U.S. at 744. "That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id*. at 744.[29]

---

[29]The Supreme Court further held,

A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court-not counsel-then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders*, 386 U.S. at 744.

"[T]he fact that an appointed appellate lawyer may find it necessary to file a motion to withdraw because he or she has concluded that an appeal is frivolous does not indicate that the indigent defendant has received less effective representation than the affluent." *McCoy*, 486 U.S. at 437.     However, "the principle of substantial equality does . . . require that appointed counsel make the same diligent and thorough evaluation of the case as a retained lawyer before concluding that an appeal is frivolous." *Id*. at 438.  Appointed appellate counsel "must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal." *Id*.

In *Robbins*, the Supreme Court limited its holding in *Anders*, holding that the procedure set forth in *Anders* was a suggested framework, and not a "straightjacket." *Robbins*, 528 U.S. at 274.   The Court stated, "the *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. States may--and, we are confident, will--craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*." *Robbins,* 528 U.S. at 276.  In *Robbins*, the Court held that California's *Wende*[30] procedure was not unconstitutional, where the "*Wende* brief provide[d] more than a one-paragraph 'bare conclusion[,]' and [c]ounsel's summary of the case's procedural and factual history, with citations of the record, both ensure[d] that a trained legal eye has searched the record for arguable issues and assist[ed] the reviewing court in its own evaluation of the case[,]" and did not require "counsel to explicitly describe the case as frivolous." *Robbins*, 528 U.S. at 281-82.  The Court stated that "[i]n determining whether a particular state procedure satisfies this standard, it is important to focus on the underlying goals that the procedure should serve--to ensure that those indigents whose appeals are not frivolous receive the counsel and merits brief

[30]*See People v. Wende*, 600 P.2d 1071 (Cal. 1979).

required by *Douglas*,[31] and also to enable the State to protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent." *Robbins*, 528 U.S. at 277–78 (citation and quotation omitted).

As stated above, Carter's appointed appellate counsel, Mr. Setser, filed a brief stating that after scouring the record thoroughly, he concluded, pursuant to *Lindsey v. State*, 939 So.2d 743 (Miss. 2005),[32] there were no arguable issues for appeal.[33] In *Lindsey*, the Mississippi Supreme Court overruled the *Turner*[34] procedure in order to "more effectively implement[] the constitutional mandates of [the Supreme Court's decision in] *Robbins*[,]" discussed above. *Lindsey*, 939 So.2d at 748-49 (Miss. 2005). Specifically, the new procedure implemented by *Lindsey* requires appellate counsel to do the following when he/she determines there are no arguable issues for appeal:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4),(7)[;] . . . (2) . . . counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly . . . [;] (3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief . . . [;] (4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal . . . [;] and (5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

*Lindsey*, 939 So.2d at 748 (citing *Robbins*, 528 U.S. at 280-81; *Turner*, 818 So.2d at 1189;

---

[31]*See Douglas v. California*, 372 U.S. 353 (1963) (holding that the Fourteenth Amendment guarantees a criminal appellant the right to counsel in his first appeal as of right).

[32]*See supra*, footnote 27.

[33]*See supra*, footnote 28.

[34]*See Turner v. State*, 818 So.2d 1186, 1189 (Miss.2001) (providing prior Mississippi procedure for attorneys who believe their client's appeal has no merit).

*Wende*, 600 P.2d at 1074). The Mississippi Supreme Court stated that "[t]he purpose of applying more stringent protective measures is simply to safeguard the constitutional right to counsel which is afforded to indigent criminal defendants throughout the entirety of appellate proceedings." *Lindsey*, 939 So. 2d at 749 (citing *Robbins*, 528 U.S. at 280).

Based on the foregoing, the court concludes that pursuant to *Robbins*, the *Lindsey* procedure provides an "adequate and effective appellate review." *Robbins*, 528 U.S. at 276–78 (internal citation and quotation omitted). Carter's appellate counsel filed a brief that was over fifteen pages long and also filed record excerpts.[35] Counsel's brief was more than a "bare conclusion" and his "summary of the case's procedural and factual history, with citations of the record, both ensure[d] that a trained legal eye has searched the record for arguable issues and assist[ed] the reviewing court in its own evaluation of the case." *Robbins*, 528 U.S. at 281-82. Moreover, counsel did not "explicitly describe the case as frivolous." *Id.*

Further, Carter filed a *pro se* appellate brief.[36] Carter's grounds for appeal were considered by the Mississippi Court of Appeals and found to be without merit. *See Carter v. State*, 941 So. 2d 846, 849-50 (Miss. Ct. App. 2006).

The court concludes that Carter has failed to establish that "his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal--that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Robbins*, 528 U.S. at 285–86 (citations omitted). However, even assuming Carter's appellate counsel was objectively unreasonable in failing to discover a non-frivolous issue for appeal, Carter has failed to establish prejudice. Specifically, Carter has failed to "show a reasonable probability that, but

---

[35]*See* State Court Record, No. 2004-KA-01361-COA, "Briefs Filed."

[36]*See* State Court Record, No. 2004-KA-01361-COA, "Briefs Filed."

for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his

appeal." *Id.* at 286.  Indeed, Carter filed a *pro se* brief arguing the issues he apparently believed

to be non-frivolous and the Mississippi Court of Appeals found them to be without merit.  *See*

*Carter*, 941 So. 2d at 849-50.  Moreover, Carter "acknowledge[s] that he is guilty of the

charges," so his claim that he would have prevailed on appeal had his appellate counsel filed a

merits brief is disingenuous.  (Memo. [2] at 27.)

Given the deferential standards that apply, the Mississippi Supreme Court's rejection of

Carter's ineffective assistance of counsel claims does not involve an objectively unreasonable

application of *Strickland* to the facts of his case.  *See Neal,* 286 F.3d at 247 (affirming denial of

petition).  Therefore, Carter is not entitled to habeas relief on this ground.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that the relief sought

in Carter's Petition for Writ of Habeas Corpus [1] be denied and that the petition be dismissed

with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after

being served a copy of this recommendation, may serve and file written objections to the

recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The

District Judge at the time may accept, reject or modify in whole or part, the recommendations of

the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with

instructions.  The parties are hereby notified that failure to file written objections to the proposed

findings, conclusions, and recommendations contained within this report and recommendation

within ten days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the proposed factual findings and legal conclusions accepted by

the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79

F.3d 1415, 1428-29 (5th Cir. 1996).

 This the 11th day of September, 2009.

s/ Michael T. Parker
_____
United States Magistrate Judge
